

## APPOINTMENT OF AGENT TRUST AGREEMENT & SECURITY AGREEMENT
### RIA FINANCIAL SERVICES

This Appointment of Agent Trust Agreement & Security Agreement ("Agreement") is made and entered into this _15_ day of _October_, 20_10_, by and between, _Lucldeen Group LLC_ located at _2498 Chamblee Tucker Rd, Chamblee, GA 30341_ ("AGENT"), and Continental Exchange Solutions, Inc. dba RIA Financial Services ("RIA"), a Delaware corporation, located at 13850 Cerritos Corporate Drive, Suite E, Cerritos, CA 90703 ("RIA").

WHEREAS,
A.  RIA is licensed to engage in the money transmission business ("Money Transmission"); and
B.  RIA desires to appoint AGENT, and AGENT is willing to act, as RIA's agent for money transmission.
NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Definitions**.
(a)  "Money Transmission" means the service provided or related to the process whereby AGENT: (1) accepts funds from customers for RIA's money transmission service and transmits same to RIA along with the RIA receipt containing payment instructions or (2) pays the proceeds of RIA's money transmission service to the customer in accordance with RIA's payment instructions.
(b)  "State Licensing Authority" means that state agency, if any, including its directors, commissioners, administrators, superintendents and employees, that governs the licensing and regulation of money transmission services providers within the State in which AGENT is located.
(c)  "Trust Funds" means the cash amounts accepted by AGENT from customers on behalf of RIA for Money Transmission service minus AGENT's applicable commission or the cash proceeds of same to be paid to the beneficiary.
(d)  "Trust Account" means a bank account which AGENT shall establish exclusively for maintaining Trust Funds segregated.

2. **Appointment**. In reliance upon the information provided to RIA by AGENT, RIA hereby appoints AGENT as its agent for the sole purposes of providing Money Transmission services in accordance with the terms of this Agreement, and AGENT hereby accepts such appointment. AGENT has made an independent examination of the business and has not entered into this Agreement by virtue of any representations of potential profits or success by RIA.

3. **Duties of AGENT**.
(a)  AGENT agrees to accept Trust Funds, and to deposit daily all such Trust Funds ("Trust Funds") into the Trust Account, from which account (if not RIA's own account) RIA shall be authorized to instruct AGENT's bank to electronically transfer Trust Funds to RIA's bank account. AGENT shall be absolutely liable to RIA for the amounts received by it from customers for the provision of Money Transmission services and assumes all risks in any such amounts. AGENT shall be deemed a trustee and AGENT shall act as a fiduciary with respect to cash amounts in its possession that have been received from customers for transfer. AGENT shall not commingle such cash amounts with its other funds or moneys. In the event AGENT commingles such cash amounts, AGENT shall be deemed to hold such amounts in trust and there shall be a constructive trust on AGENT's property for the exclusive benefit of RIA in the amount of the Trust Funds, which agent owes RIA. AGENT shall not accept a money transfer from a customer without receiving full payment in cash of the amount to be transmitted and the corresponding fee.
(b)  In providing Money Transmission services, AGENT shall use only money transfer instruments (invoices) provided by RIA, which AGENT shall maintain in a keyed metal cabinet or safe with access strictly limited to only those employees of AGENT that are engaged in money transmission. AGENT will be held strictly accountable for use of the forms. AGENT shall transmit such invoices to RIA by facsimile or computer communication, promptly upon acceptance of the order.
(c)  AGENT shall pay the proceeds of RIA's Money Transmission service to the beneficiaries thereof in accordance with RIA's payment instructions. RIA shall remit payment instructions to AGENT by facsimile or computer communication. The cash proceeds of a money transfer ("Trust Funds") shall be paid to the beneficiary within 24 hours of receipt of RIA's instructions. Payments shall be made in United States Dollars or such other currency as RIA may indicate. AGENT shall provide RIA with a written receipt or confirmation of the delivery or payment within 24 hours of completion

Agent Initials _____  ✓

- 1 -

Revised March 2006

thereof by, as appropriate, facsimile or next-day courier service. RIA shall thereafter reimburse AGENT for payments within 72 hours of receipt of the confirmation of payment.

(d) AGENT shall comply with such standard rate schedules and procedures and directives as RIA may from time to time establish for Money Transmission services. RIA reserves the right to amend the aforementioned at any time by giving written notice thereof to AGENT. In the event of any conflict between such amendments and the terms of this Agreement, the latter shall control. Agent shall comply with all regulations of governmental authorities.

(e) AGENT shall not engage in Money Transmission at any locations or outlets or through any subagent(s), which have not been pre-approved in writing (i) by RIA and (ii) if required, by the State Licensing Authority.

(f) AGENT agrees to provide RIA reports and settlement sheets containing such information within 24 hours and in such form as they may be required by RIA, with respect to the performance of AGENT's Obligations.

(g) AGENT agrees to maintain such accounts, correspondence, memorandums, papers, books and other records concerning transactions subject to this Agreement as are required by state and federal regulations. If required by State Licensing Authority, AGENT agrees to prominently display licenses, certificates of authority, disclosure notices or any other required documentation. AGENT agrees to permit RIA to inspect such records, as well as any and all other records maintained by AGENT with respect to its business operations or financial condition, and to make and take copies of any such records. The expenses incurred in any such inspection by RIA shall be borne by RIA. AGENT also agrees to permit the State Licensing Authority, with or without notice, to inspect such books and records maintained by the AGENT.

(h) AGENT shall not sell any money transmissions or money orders unless the name of the licensee (RIA Telecommunications, Inc.) clearly appears on the face of the receipt or money order (the licensee shall not condition its engagement as obligor under the receipt or money order upon remittance of the proceeds of sale from AGENT.

(i) AGENT shall not act on behalf of customer(s) as a courier for money transmission, which activity would itself require the AGENT to be licensed as a money transmitter.

(j) AGENT shall provide RIA with certified financial statements whenever RIA in its discretion deems necessary.

(k) AGENT agrees to advise RIA of any change in circumstances or any other event which could have a material adverse effect on the operation of AGENT's business or upon AGENT's ability to perform its obligation hereunder within five (5) calendar days of the occurrence of such event.

(l) AGENT shall procure and maintain, at its own cost and expense, all insurance required by law and any lease arrangements for AGENT's service locations, as well as general liability insurance in amounts, with insurers and under terms and conditions acceptable to RIA.

(m) AGENT agrees and understands that all blank invoices and RIA signs in its possession are the property of RIA and AGENT shall return same to RIA immediately upon RIA's request for their return. Agent shall allow RIA representatives unlimited access with or without notice to enter its AGENT locations for the purpose of retrieving RIA's blank invoices, signs, and other RIA property.

(n) AGENT shall be solely responsible for complying with the terms of AGENT's lease of its location, and shall provide AGENT's landlord with the notice and obtain approval of RIA signs if such is required.

(o) AGENT SHALL BE SOLELY RESPONSIBLE FOR ITS COMPLIANCE WITH THE BANK SECRECY ACT AND OTHER FEDERAL ANTI-MONEY LAUNDERING REGULATIONS.

(p) AGENT shall use RIA's money transfer software on a PC or laptop, which shall be located and remain at all times at AGENT's place of business. AGENT shall not use a portable computer to accept money transfers outdoors or at any location other than at AGENT's place of business.

(q) It is expressly agreed that a default or breach of any Obligation under this Agreement at any one of AGENT's business locations shall be deemed a default and breach at each and every one of AGENT's business locations. Additionally, RIA shall have the right to reconcile AGENT's account balance (and/or the account balances of AGENT's affiliates/subsidiaries) when it/they act(s) as a paying agent (correspondent) against AGENT's account balance (and/or the account balances of AGENT's affiliates/subsidiaries) when it/they accept(s) money transfer orders.

(r) AGENT acknowledges and agrees that a change in AGENT's business address(es) shall not affect whatsoever the validity of this Agreement, nor the obligations of the AGENT to comply with same. This Agreement shall remain in full force and effect notwithstanding a change of AGENT's business address (es).

(s) AGENT shall operate in full compliance with the laws of the State in which AGENT is located and all federal United States laws. AGENT acknowledges and agrees that it is subject to the supervision, examination and regulation of the State Licensing Authority regulating money transmission within the State in which AGENT is located. As part of that supervision, examination and regulation, AGENT acknowledges and agrees to provide to State Licensing Authority and RIA any materials and/or documentation, including photo identification and fingerprints upon request. AGENT further acknowledges and agrees that as a part of that supervision, examination and regulation, the State Licensing Authority may require RIA to cancel the Agent Trust Agreement.

Agent Initials _____ ✓

- 2 -

Revised March 2006

(t) AGENT is under a duty to act only as authorized under this Agent Trust Agreement. If AGENT exceeds its authority under this Agent Trust Agreement, AGENT is subject to the cancellation of Agent Trust Agreement and further disciplinary action by the State Licensing Authority.

(u) AGENT shall report to RIA the theft or loss of a payment instrument within 24 hours from the time the AGENT knew or should have known of the theft or loss.

4. **Compensation to AGENT.**

(a) RIA agrees to pay AGENT a commission for the performance of its Obligations hereunder as set forth in the accompanying price list entitled "Agents' Commissions" (Exhibit 1). Except as set forth in Paragraph 4(c) hereunder, such commissions shall constitute the entire compensation to be paid to AGENT under this Agreement. RIA shall not be liable for payment of any expenses incurred by AGENT in connection with this Agreement, and AGENT may not incur any such expenses in the name of RIA.

(b) RIA agrees to pay AGENT its commissions monthly by the 15th day of the following month. Commissions shall be fully earned only upon payment to RIA in full of all Trust Funds.

(c) In consideration for payment of the proceeds of RIA's Money Transmission service to the beneficiaries thereof, AGENT shall receive a commission equal to thirty percent of the charges charged to customers by RIA. Such commissions shall be deemed earned by AGENT upon completion of the corresponding payment instruction and upon receipt by RIA of AGENT's confirmation of delivery of payment.

(d) RIA hereby reserves the right to unilaterally vary the rate of commission for the varying countries, as deemed necessary in RIA's sole discretion.

5. **Trademarks, Service Marks and Trade Names.** AGENT shall be authorized to use RIA's trademarks, service marks and trade names only in accordance with RIA's instructions and only with respect to advertising and promotional material approved by RIA in writing. AGENT shall not at any time, either during the term of this Agreement or after its expiration or termination, adopt or use or register a symbol or combination thereof which is identical to or similar to any trademarks, service marks, or trade names of RIA or its affiliates. In no event shall AGENT use such words, symbols, or combination as part of its corporate name. RIA shall be authorized to use AGENT's trademarks, service marks and trade names with respect to advertising and promotional materials.

6. **Confidentiality.** AGENT recognizes that RIA may make available to AGENT confidential trade secrets and proprietary information of RIA, including information relating to RIA's agents, correspondents, customers, procedures and methods of operation (hereinafter "Confidential Information"). Agent agrees not to disclose Confidential Information directly or indirectly to any third party and/or copy or duplicate any Confidential Information for his/her own use without RIA's prior consent, which must be in a writing signed by the President or Chief Operating Officer of RIA. The provisions of this Paragraph shall expressly survive termination of this Agreement.

7. **Indemnification.** AGENT shall indemnify and hold harmless RIA, its officers, directors and shareholders, and all affiliates of each of them, for and against any loss, liability or expense, including attorneys' fees and costs, caused directly or indirectly by a failure of AGENT to adequately or timely to perform any of its Obligations hereunder or failure to comply with all laws and regulations of governmental authorities. AGENT shall indemnify, and reimburse RIA, any fines, fees or other penalties incurred by RIA as a result of AGENT's failure to comply with all laws and regulations of governmental authorities, including, but not limited, to compliance obligations as stated herein below.

8. **Termination.**

(a) Agent's Initials ____ This Agreement shall remain in full force for an initial term of five (5) years (hereinafter the "Term"). This term shall be automatically renewed for one or more periods of five (5) years unless either RIA or AGENT shall provide notice in writing to the contrary at least ninety (90) days before the end of the then effective term. Notwithstanding the foregoing, RIA may terminate this Agreement with or without cause upon fifteen (15) days written notice to the AGENT.

(b) Notwithstanding Paragraph 8(a) above, RIA may immediately terminate this Agreement at any time if (i) AGENT defaults in any of its Obligations under this Agreement; (ii) AGENT engages in any conduct which RIA in its sole discretion deems to constitute negligence or a violation of applicable law; (iii) the transactions originating from the AGENT location are deemed by RIA to represent a regulatory compliance risk; (iv) any material, adverse change occurs with respect to the financial or other condition of AGENT or any change occurs in the ownership of AGENT; (v) AGENT fails to pay Trust Funds in accordance with this Agreement or otherwise becomes indebted to RIA; (vi) any unexplained disappearance or misuse of money transfer receipts occurs; (vii) State Licensing Authority orders RIA to terminate its relationship with the AGENT; and/or (viii) in RIA's sole discretion, AGENT'S sales volume is low or AGENT experiences a sudden dramatic change in sales volume.

(c) Upon termination of this Agreement; (i) AGENT shall forthwith return all documents, equipment, moneys or other property of RIA in AGENT's possession; (ii) All payment instructions which have been issued by RIA, but not executed by AGENT, shall be completed or, at RIA's option, canceled; (iii) AGENT shall receive any commission due in accordance with the terms of this Agreement; and (iv) AGENT shall furthermore cease providing RIA's Money Transmission services.

-3-

Agent Initials ____

Revised March 2006

9. **Independent Contractor.**

(a) It is hereby acknowledged and agreed that AGENT is an independent contractor and, that except as expressly provided herein, this Agreement shall not constitute AGENT as a legal representative or agent of RIA for any purpose. AGENT is not granted any right or authority to assume or create any responsibility, express or implied, on behalf of RIA or to bind RIA in any manner whatsoever.

(b) This agreement shall not in any way be construed to create between RIA and the employees of AGENT a relationship of agency, employment or representation, and AGENT hereby agrees to assume full and sole responsibility for the supervision of the conduct of such employees in rendering services for RIA. In the event that any governmental agency or court determines that an employer-employee relationship exists between RIA and AGENT's employees, AGENT agrees to indemnify and hold RIA harmless for and against any and all liabilities, claims, demands, damages and expenses (including attorney's fees and costs) resulting therefrom.

(c) AGENT agrees to perform the services required under this Agreement with its own employees and not to use or appoint any sub-agents or correspondents for such purpose without the prior written approval of RIA and, if necessary, the State Licensing Authority. AGENT agrees not to share, split, rebate or discount any fees or charges for providing services hereunder with any person or entity.

10. **Security.**

(a) Grant of Security Interest: In order to secure the performance of all duties of AGENT to RIA under and pursuant to this Agreement (hereinafter the "duties") and to secure any indebtedness now or hereafter owed by the AGENT to RIA, AGENT hereby grants jointly and severally to RIA a continuing and first priority security interest in all of AGENT's cash, bank account(s), inventory, accounts receivable, equipment, fixtures, and any proceeds therefrom, as well as any other properties, rights, interests and assets of every kind and description, now owned or hereafter acquired, tangible or intangible (hereinafter collectively referred to as the "Collateral").

(b) Concerning the Collateral, AGENT represents, warrants and covenants to RIA as follows: No financing statement covering any of the Collateral is on file in any public office or financing records; and the AGENT is the legal owner of all the Collateral, free and clear of all liens, encumbrances and claims whatsoever, other than the security interest granted hereunder.

(c) At the written request of RIA at any time after the occurrence of a breach of AGENT's duties under this Agreement, all proceeds of the Collateral, in an amount equal to the debt owed to RIA by AGENT or equal to the loss suffered by RIA as a result of AGENT's breach, shall be delivered to RIA promptly upon receipt of RIA's written request.

(d) AGENT shall defend, at its sole expense, the Collateral against all adverse claims and shall do, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as RIA may require to more completely vest in RIA and assure to RIA its rights, hereunder or in any of the Collateral.

(e) Remedies in the Event of Breach by AGENT. If AGENT breaches any of its duties under this Agreement, RIA shall have the authority, without notice or demand, to immediately exercise the following rights and remedies to the extent permitted by applicable law in addition to the rights and remedies of a secured party under the Uniform Commercial Code (all such rights and remedies being cumulative, not exclusive, and enforceable alternatively, successively or concurrently as RIA deems desirable): (i) to institute any proceeding(s) deemed appropriate by it to enforce the duties secured hereby and/or seek all amounts permitted by applicable statute, including treble damages; (ii) to take possession of the Trust Funds or Collateral, and for that purpose RIA may, so far as AGENT can give authority therefore, enter upon the premises on which the Trust Funds or Collateral or any part thereof may be situated and remove the same therefrom without any liability for suit, action or other proceeding by AGENT. RIA may require AGENT to assemble and deliver the Collateral to such place(s) as RIA may designate which is reasonably convenient to both parties; (iii) to operate, manage and control the Collateral, or permit the Collateral or any portion thereof to remain idle and collect all rents and revenues therefrom, and sell or otherwise dispose of any or all of the Collateral.

Upon such terms and under such conditions as in its sole discretion it deems advisable; (iv) RIA may, but is not obligated to, (a) demand, sue for, collect or receive any money or property at any time due, payable or receivable to AGENT, (b) compromise and settle with any person or entity liable on such debt, and/or (c) extend the time of payment or otherwise change the terms thereof, as to any person or entity liable thereon, without incurring responsibility to AGENT; (v) have a receiver appointed to protect the Collateral and to take possession of AGENT's businesses; (vi) procure a pre-judgment Writ of Attachment; and/or (vii) obtain injunctive relief to cure AGENT's breach or protect the Collateral.

(f) A breach or default by any one of AGENT's outlets shall be deemed a default and breach at each and every one of AGENT's outlets. This Paragraph shall be binding on the successors and assigns of AGENT.

11. **Exclusivity.**

-4-

Agent Initials _____ ✓

Revised March 2006

Agent's Initials _N|α_ (a)  AGENT agrees to enter into an exclusive business relationship with RIA for the Term of this Agreement, pursuant to which AGENT shall engage in the business of money transmission solely on behalf of RIA and shall not conduct any money transfers independently or as an agent of or on behalf of any other money remitter.

(b)  AGENT agrees that AGENT's appointment is not exclusive as to RIA, and RIA may at its discretion appoint other agents in any location whatsoever.

12.  **Computer.**  In the event RIA has issued a computer ("Computer") to AGENT for AGENT's use, AGENT hereby acknowledges that the Computer is issued to AGENT with preinstalled software that is duly licensed and in compliance with Federal copyright laws. After issuance of the Computer to AGENT, RIA has no control over or responsibility for AGENT's use of the Computer or AGENT's installation, reproduction or use of software on the Computer. Notwithstanding the foregoing, AGENT agrees that it will not install, reproduce or use on the Computer any software that is unlicensed or unauthorized or the use of which violates Federal copyright laws. AGENT agrees to maintain sufficient documentation evidencing that any software installed on the Computer is duly licensed and authorized. AGENT shall hold harmless and indemnify RIA from and against any and all claims, demands, losses, damages, debts, liabilities, suits, causes of action, expenses, costs or fees (including without limitation attorneys' fees) in any way relating to or arising out of AGENT's use of the Computer or AGENT's installation, reproduction or use of unlicensed software on the Computer.

13.  **Software License.**
(a)  "Licensed Software" shall mean the Software, known as RIA Money Transfer System, which is a program, that facilitates the transmission of funds and related information among RIA and its agents and correspondents, and any enhancements or modifications made by RIA to same.

(b)  RIA grants to AGENT a non-exclusive license ("License") to use the Licensed Software solely on equipment designated by RIA. AGENT agrees to use the Licensed Software only for the purposes of conducting the business described in this Agreement. AGENT may not sub-license the Licensed Software without the specific prior written consent of RIA.

(c)  AGENT acknowledges that it has no proprietary right to or interest in the Licensed Software and that the Licensed Software constitutes a valuable asset and trade secret licensed by RIA specifically for marketing purposes, and is confidential.

(d)  AGENT agrees not to, without specific prior written permission from RIA, provide or otherwise make available for any purpose, the Licensed Software, to any business organization, governmental body, or to any person other than AGENT's employees for use as authorized under this Agreement. AGENT agrees not to modify, remove, suppress, or duplicate the Licensed Software's identification labels, copyright notices, or run-time or other identification messages in any way.

(e)  RIA MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, REGARDING THE LICENSED SOFTWARE. THE LICENSED SOFTWARE IS PROVIDED "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE LICENSED SOFTWARE IS WITH THE AGENT. RIA DOES NOT WARRANT THAT THE SOFTWARE WILL BE UNINTERRUPTED OR ERROR FREE. IN NO EVENT SHALL RIA BE RESPONSIBLE TO AGENT FOR ANY DAMAGES, INCLUDING ANY LOST SAVINGS OR PROFITS OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES, ARISING IN CONNECTION WITH THE USE OF THE LICENSED SOFTWARE.

(f)  AGENT agrees that the provision of this section shall survive the termination of this Agreement.

14.  **General Provisions.**
(a)  _Governing Law and Venue._  This Agreement shall be construed and enforced in accordance with the laws of the State of California. Each party hereby consents to the submission of any dispute arising under this Agreement to the Courts of the State of California, in the County of Los Angeles, or to the Courts of the State in which AGENT resides or owns real property.

(b)  _Notices._  All notices shall be deemed duly given if delivered personally or sent by registered or certified mail or recognized overnight courier to the respective addresses set forth above, or to such other address as either party may advise from time to time.

(c)  _Assignment._  Neither this Agreement nor any rights or obligations hereunder may be assigned by AGENT without RIA's prior written consent. RIA may at its own discretion assign its rights under this Agreement.

(d)  _Waiver._  No waiver by RIA of any breach of any of the Obligations or duties of AGENT shall be construed as a waiver of any succeeding breach of the same or any other obligation or duty. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

(e)  _Entire Agreement._  This Agreement constitutes the entire agreement between RIA and AGENT with respect to the subject matter hereof and supersedes all previous negotiations, commitments and writings. This Agreement may be changed or modified only by a writing expressly to that effect signed by RIA and AGENT.

(f)  _Severability._  The invalidity of any provision of this Agreement as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

Agent Initials _____ ✓

- 5 -

Revised March 2006

(g) <u>Attorneys' Fees and Costs</u>. If any of the parties to the Agreement hereto bring action against a party for any relief as a result of any controversy or claim arising out of or relating to this Agreement or breach of this Agreement, the losing party shall pay the prevailing party a sum equal to all costs and expenses incurred to enforce the Agreement, including reasonable attorneys' fees and costs, which shall be deemed to accrue at the commencement of such action. Reasonable attorneys' fees and costs include attorneys' fees and costs incurred by the prevailing party for both in-house and outside legal counsel.

(h) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

(i) <u>Headings</u>. The section headings used in this Agreement are intended for convenience only and shall not be used in interpreting this Agreement or in determining any of the rights or obligations of the parties to this Agreement.

15. **AGENT's Compliance Obligations.**

(a) Agent shall assume total responsibility for Agent's and its Employees' compliance with the USA Patriot Act ("Act"), the Bank Secrecy Act ("BSA"), and all other anti-money laundering and terrorist financing laws, and shall train all its employees in the proper procedures for compliance with said laws.

(b) Agent understands and warrants that Agent and its Employees (hereinafter collectively referred to as "Agent") shall comply with the following legal requirements at all times:

✓ 1. _____ Agent shall never commit or knowingly facilitate the crime of money laundering or terrorist financing. Agent shall never offer money transfer, money order, check cashing, or any other money service unless Agent has a proper state license or authorization or is acting as an agent of a licensed company.

✓ 2. _____ Agent acknowledges that money transfers of $3,000 dollars or more are subject to the customer identification and record keeping requirements prescribed by law. Agent shall verify the customer's identification and photocopy the identification document(s) before accepting or paying out a transaction totaling $3,000 dollars or more. Agent shall obtain from the customer all information and documents (including the customer's identification) required to accept or pay out a money transfer of $3,000 dollars or more, following strictly at all times the instructions set forth in RIA's Compliance Manual.

✓ 3. _____ Agent acknowledges that currency transactions over $10,000 dollars (including fees) require the filing of an IRS Currency Transaction Report ('CTR") with the IRS Detroit Computing Center, P.O. Box 33604, Detroit, MI 48232-5604, Attn: CTR, within fifteen days of the transaction. Agent shall follow strictly the procedures for filing CTR forms as set forth in RIA's Compliance Manual. Agent shall complete a CTR and obtain a copy of the customer's identification when Agent recognizes that two or more currency transactions are conducted on the same day by the same person (or on behalf of the same person), and the sum of the transactions exceeds $10,000 (multiple transactions).

✓ 4. _____ Agent shall monitor repeat and large transactions in order to detect individuals, who may be attempting to break down or "structure" transactions to avoid presenting identification, the filing of a CTR, or any other legal requirement. Agent acknowledges that structuring transactions is illegal, and as such subjects the participants to civil and criminal penalties. Agent further acknowledges that structured transactions that appear to be designed to avoid a legal requirement fall within the category of suspicious transactions.

✓ 5. _____ Agent shall file a Suspicious Activity Report by Money Services Businesses (SAR-MSB) with FinCEN, c/o DCC P.O. Box 32621, Detroit MI 48232 within thirty days of discovering suspicious transaction(s) involving $2,000 dollars or more, OR contact the IRS/CID at 1-800-800-2877 immediately.

✓ 6. _____ Agent shall follow strictly RIA's Know Your Customer Policy by: *a)* obtaining as much information as possible about each customer, specially regular customers, in order to detect suspicious transactions; *b)* asking customers about the source of funds used to conduct frequent and/or large transactions, specially when Agent considers a transaction suspicious or when RIA requests such information; *c)* reporting to the government transactions, which Agent suspects might be part of a money laundering or terrorist financing scheme; and *d)* rejecting transactions, which Agent knows would result in money laundering or terrorist financing.

✓ 7. _____ Agent acknowledges that the Act requires the Agent to have in place a program to prevent money laundering and terrorist financing, which includes at a minimum, (i) internal policies, procedures, and controls; (ii) the designation of a compliance officer; (iii) an ongoing employee training program; and (iv) an independent audit function to test the compliance program. Agent shall adopt and follow RIA's compliance policies and procedures strictly. Agent shall designate in writing an employee, who shall serve as Compliance Officer and who shall oversee Agent's compliance with applicable law. Agent shall use the Compliance Manual and all other materials Agent receives from RIA to train its employees in preventing money laundering and terrorist financing. Agent shall subject its compliance program to a yearly review by an independent firm or a person within Agent's organization, who is not the Compliance Officer and knows the requirements of the law.

✓ 8. _____ Agent shall register as a money services business with the federal government using form TDF 90-22.55 if Agent is offering its own money service independently, and not using a licensed company to conduct the transaction(s).

✓ 9. _____ Agent acknowledges that Office of Foreign Assets Control (OFAC) regulations prohibit Agent from engaging in transactions involving: (i) countries which are under some type of U.S. embargo or sanction; and (ii) specially

Agent Initials _____ ✓

- 6 -

Revised March 2006

01/05/2010  13:47    7708600784                    GA 143                                        PAGE  18

designated nationals, terrorists, and narcotics traffickers (hereinafter referred to as "prohibited transactions"). OFAC regulations also require the blocking of funds corresponding to prohibited transactions. Agent shall at all times cooperate with RIA in obtaining any additional information from the customer necessary to evaluate whether a transaction is prohibited.

✓ 10. ___  Agent acknowledges receipt of RIA's Compliance Manual. Agent shall read thoroughly the Compliance Manual and all the materials it receives from RIA concerning compliance with the Act, BSA, and other anti-money laundering /terrorist financing statutes.

✓ 11. ___  AGENT shall **NEVER ALLOW AN EMPLOYEE WHO IS NOT TRAINED IN ANTI-MONEY LAUNDERING AND TERRORIST FINANCING COMPLIANCE TO ACCEPT OR PROCESS TRANSACTIONS.**

✓ 12. ___  Agent shall follow all RIA policies concerning compliance, which RIA may establish or amend from time to time, including but not limited to RIA's current policy requiring verification of the remitter's identification prior to accepting a money transfer of $1,000 or more.

✓ 13. ___  Agent shall contact RIA's Compliance Department or the IRS/CID at 1-800-800-2877 should Agent have any questions or doubts about the proper procedures for compliance with anti-money laundering / terrorist financing laws.

✓ 14. ___  Agent shall indemnify and hold harmless RIA, its officers, directors, shareholders, and employees, for and against any loss, liability or expense, including attorneys' fees, caused directly or indirectly by a failure of Agent to fully perform its compliance obligations.

IN WITNESS WHEREOF, this Agreement is entered into by and between RIA and AGENT as of the date first above written.

**RIA**

By: _____
Name: Juan C. Bianchi
Title: Chief Operating Officer

**AGENT**

✓ By: _____
(Authorized Signature)
Name: RAFAEL CARDONA
Title: MEMBER-MANAGER

**AGENT**

By: _____
(Authorized Signature)
Name: _____
Title: _____

Agent Initials ____ ✓

Revised March 2006

- 7 -

01/05/2010  13:47    7708600784                    GA 143                                              PAGE  19

## PERSONAL GUARANTY

In order to induce RIA to enter into the foregoing Agreement and in consideration thereof, the undersigned hereby personally, jointly and severally guarantee to RIA full and prompt payment by AGENT of all sums payable by AGENT and the prompt and complete performance by AGENT of all other Obligations of AGENT under the foregoing Agreement. The undersigned further guarantee to indemnify RIA against any and all loss, damage, claims, liability or expenses (including attorney's fees and costs) resulting from the failure of AGENT to pay or perform any Obligation of AGENT under the terms of the aforesaid Agreement. The undersigned further authorize RIA, RIA's sister companies, and any consumer reporting agency or investigative firm employed by RIA or by a RIA sister company to receive, investigate and verify any and all business and/or personal information about the undersigned, including, but not limited to, ordering the undersigned's credit report(s), all without causing any liability to RIA and/or RIA's sister companies whatsoever to arise therefrom. The undersigned, in furtherance of securing the performance of all duties of AGENT to RIA under and pursuant to the foregoing Agreement and to secure any indebtedness now or hereafter owed by the AGENT to RIA, hereby grant jointly and severally to RIA a continuing and first priority security interest in all of the undersigned's cash, bank account(s), inventory, accounts receivable, equipment, fixtures, and any proceeds therefrom, as well as any other properties, rights, interests and assets of every kind and description, now owned or hereafter acquired, tangible or intangible (hereinafter collectively referred to as the "Collateral").

The undersigned waive(s) any notice of acceptance of this Guaranty and any notice of default by AGENT, and agree(s) that action may be brought directly against any of the undersigned irrespective of whether any action has been taken against AGENT or any of the other undersigned. This Guaranty shall be construed and enforced in accordance with the laws of the State of California and the undersigned consent to the jurisdiction of the courts of the State of California, or to the Courts of the State in which AGENT resides or owns real property, with respect to this Guaranty.

Executed  15 / OCTOBER 2009
              (Date)

✓ _____            _____
    Signature of Guarantor                        Signature of Guarantor

Name: RAFAEL CARDONA                         Name: _____

Address: 2869 ROARLAKE DR.                   Address: _____
         ATLANTA GA 30345                             _____


_____              _____
    Signature of Guarantor                        Signature of Guarantor

Name: _____                 Name: _____

Address: _____                Address: _____
         _____                         _____


                                     - 8 -                      Agent Initials _____ ✓
                                                                Revised March 2006

01/05/2010  13:47    7708600784                    GA 143                                    PAGE  27



## AMENDMENT TO
## APPOINTMENT OF AGENT TRUST AGREEMENT & SECURITY AGREEMENT
## RIA FINANCIAL SERVICES

This Amendment (hereinafter the "Amendment"), effective as of <u>OCTOBER</u> <u>15</u>, 20<u>10</u>, is made to the Appointment of Agent Trust Agreement & Security Agreement (hereinafter the "Agreement") dated _____, 20___, between Continental Exchange Solutions, Inc. dba RIA Financial Services ("RIA"), a Delaware Corporation, located at 13850 Cerritos Corporate Drive, Suite E, California 90703 ("Agent") and <u>Ladden Group LLC DBA El Dorado Check Cashing</u> located at <u>2498 Chamblee Tucker Rd Chamblee Ga 30341</u>.

The parties have discussed the relationship contemplated by the Agreement and have found some aspects in need of modification. In accordance with that discussion, the parties have mutually agreed to make this Amendment in mutual agreement that this Amendment modifies the Agreement sufficiently to address each party's concerns and represents the accurate present intention of the parties. Except as otherwise indicated, all terms defined in the Agreement shall have the same meanings when used in this Amendment.

WHEREAS, RIA and Agent both desire to amend the Agreement to include additional Agent locations.

NOW THEREFORE, for good and valuable consideration, the value and sufficiency of which is hereby acknowledged, RIA and Agent agree as follows:

(1)   Recital B on page 1 is hereby amended to read in its entirety as follows:

**RIA desires to appoint AGENT, and AGENT is willing to act, as RIA's agent for money transmission at the locations described in Exhibit 2 attached hereto.**

(2)   For the addition of Exhibit 2 attached hereto.

All other provisions and terms of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, this Amendment is hereby incorporated into the Agreement as of the date aforementioned.

**CONTINENTAL EXCHANGE SOLUTIONS, INC.**

By: _____
Name: Juan C. Bianchi
Title: Chief Executive Officer

**AGENT**

By: _____
(Authorized Signatory)
Name: Rafael Cardona
Title: Member Manager

**AGENT**

By: _____
(Authorized Signatory)
Name: _____
Title: _____

01/05/2010  13:47    7708600784              GA 143                                              PAGE  28



## EXHIBIT 2
## AGENT LOCATIONS

1. 2498 Chamblee Tucker Rd, Chamblee GA 30341
2. 2552 S Cobb Dr Ste I Smyrna GA 30080
3. 2522 Cruse Rd Ste B Lawrenceville GA 30044
4. 1027 Alpharetta St Roswell GA 30075
5. 1545 Hwy 138 Conyers GA 30013
6. 4840 Jimmy Carter Blvd Ste B, Norcross GA 30093
7. _____

The above list of Agent Locations is subject to change from time to time as agreed upon by the parties

Agent's Initials _____

Page 2 of 2