

## AMENDMENT TO
## APPOINTMENT OF AGENT TRUST AGREEMENT & SECURITY AGREEMENT
## RIA FINANCIAL SERVICES

This Amendment (hereinafter the "Amendment"), effective as of December ___, 2010 (the "Effective Date"), is made to the Appointment of Agent Trust Agreement & Security Agreement (hereinafter the "Agreement"), dated October 15, 2010, between Continental Exchange Solutions, Inc. dba RIA Financial Services ("RIA"), a Delaware Corporation, located at 6565 Knott Avenue, Buena Park, CA 90620 and Ladden Group, LLC ("AGENT") located at 2498 Chamblee Tucker Rd. Chamblee, GA 30341. The parties have discussed the relationship contemplated by the Agreement and have found some aspects in need of modification. In accordance with that discussion, the parties have mutually agreed to make this Amendment in mutual agreement that this Amendment modifies the Agreement sufficiently to address each party's concerns and represents the accurate present intention of the parties. Except as otherwise indicated, all terms defined in the Agreement shall have the same meanings when used in this Amendment.

    **WHEREAS**, RIA and Agent both desire to amend the Agreement to create a Special Agent relationship between the parties.

    **NOW THEREFORE**, for good and valuable consideration, the value and sufficiency of which is hereby acknowledged, RIA and Agent agree as follows:

(1)    Section 8(a) is hereby amended to read in its entirety as follows:

    (a)    This Agreement shall remain in full force for an initial term of five (5) years (hereinafter the "Term"). This Term shall be automatically renewed for one or more periods of five (5) years unless either RIA or AGENT shall provide notice in writing to the contrary at least ninety (90) days before the end of the then effective Term. **Notwithstanding the foregoing, in no event shall the Term, whether in its initial or renewal term, end prior to the expiration of the Special Agent Term as defined in Exhibit 3 attached hereto and incorporated herein by reference.** In addition to the foregoing, RIA may terminate this Agreement with or without cause upon fifteen (15) days written notice to the AGENT.

(2)    Section 11(a) is hereby amended to read in its entirety as follows:

    (a)    AGENT agrees to enter into a business relationship with RIA for the Special Agent Term of this Agreement and according to the terms of Exhibit 3 attached hereto and incorporated herein by reference, pursuant to which AGENT commits to accept, process and maintain a minimum monthly volume of money transfer orders on behalf of RIA for payment through RIA's international network of payment locations as described in Exhibit 3 attached hereto and incorporated herein by reference.

(3)    For the addition of the following paragraph identified as Section 14(j):

    (j)    <u>Facsimile signatures.</u>  The parties agree that this Amendment, agreements ancillary to this Amendment, and related documents to be entered in connection with this Amendment will be considered signed when the signature of a party is delivered by facsimile transmission. Such facsimile signature shall be treated in all respects as giving the same effect as an original signature. Notwithstanding the foregoing, AGENT remains obligated to deliver to RIA all original, signed signature pages immediately upon execution.

(4)    Exhibit 1 is hereby amended and replaced with Exhibit 1 attached hereto and incorporated herein by reference.

(5)    Exhibit 2 is hereby amended and replaced with Exhibit 2 attached hereto and incorporated herein by reference.

(6)    The terms of this Amendment and the attached Exhibit 3 shall not be effective unless and/or until AGENT receives all required RIA departmental approvals necessary to operate as a Special Agent of RIA.





All other provisions and terms of the Agreement, including but not limited to commission percentages payable to AGENT for money transmission services, shall remain in full force and effect.

IN WITNESS WHEREOF, this Amendment is hereby incorporated into the Agreement as of the date aforementioned.

CONTINENTAL EXCHANGE SOLUTIONS, INC.

By: _____
Name: Juan C. Bianchi
Title: Chief Executive Officer

AGENT

By: _____CARDONA_____
Name: RAFAEL CARDONA
Title: MEMBER - MANAGER

AGENT

By: _____
Name: _____
Title: _____

Agent Initials __R/__



## EXHIBIT 1

### AGENT COMMISSIONS FOR MONEY TRANSFER TRANSACTIONS

Agent Name: Ladden Group, LLC

Address: 2498 Chamblee Tucker Rd.

City: Chamblee    State: GA    Zip Code: 30341

As compensation for money transfer transactions carried out on Agent's premises for payment to beneficiaries in the countries and currencies below, the commission payable to Agent will be as follows:

I. **Commission Table I:** Commencing on the Effective Date of the Amendment and continuing thereafter for the period of one (1) year, the commissions payable to Agent shall be as set forth below in Table I:

**Table I. Commissions for Year One of Special Agent Term**

| Country | Commission |
| --- | --- |
| Mexico (MXN) | 30% |
| Colombia (COP), Brazil (BRL) | 50% |
| Guatemala (GTQ), Honduras (HNL), El Salvador (USD) | 50% |
| Peru (USD), Ecuador (USD) | 50% |
| Dominican Republic (DOP) | 100% |
| Dominican Republic (USD) | 100% -$3 |
| Other Countries | 30% |

II. **Commissions Table II:** Table II below sets forth the commissions payable to Agent commencing upon the expiration of the commissions described in Table I above and continuing thereafter until the expiration of the Term of the Agreement, as amended by the Amendment:

**Table II. Commissions for Remainder of Term**

| Country | Commission |
| --- | --- |
| Mexico (MXN), Colombia (COP), Brazil (BRL) | 50% |
| Guatemala (GTQ), Honduras (HNL), El Salvador (USD) | 50% |
| Peru (USD), Ecuador (USD) | 50% |
| Dominican Republic (DOP) | 100% |
| Dominican Republic (USD) | 100% -$3 |
| Other Countries | 30% |

Agent Initials _____



**EXHIBIT 2**

**AGENT LOCATIONS**

1. 1027 Alpharetta St., Roswell, GA 30075

2. 2522 Cruse Rd., Suite B, Lawrenceville, GA 30044

3. 2498 Chamblee Tucker Rd., Chamblee, GA 30341

4. 1543 Hwy 138 SE, Conyers, GA 30094

5. 2552 S. Cobb Dr., SE Suite I, Smyrna, GA 30080

Agent Initials _____



## EXHIBIT 3
## SPECIAL AGENT TERM

1.  AGENT and Rafael Cardona (collectively referred to herein as the "AGENT") agree(s) to accept and process a minimum monthly volume of money transfer orders on behalf of RIA, for payment through RIA's international network of payment locations, for the Special Agent Term of five (5) years ("the "Special Agent Term"), defined as the five (5) year period commencing upon the Effective Date of the Amendment to the Appointment of Agent Trust Agreement & Security Agreement (the "Amendment"). During the Special Agent Term, commits to accept, process and maintain a minimum monthly volume of money transfer orders on behalf of RIA for payment through RIA's international network of payment locations as described herein. Said money transmission business relationship shall apply to any and all current and future businesses and locations owned and/or operated by AGENT, either directly or indirectly, in whole or in part, or as a shareholder, partner, member and/or sole proprietor.

2.  In consideration of the above-referenced obligations, RIA shall pay AGENT the following sums:

    (a)  $100,000.00: upon execution of the Amendment; and
    (b)  $50,000.00: six (6) months after execution of the Amendment and contingent upon AGENT accepting and processing 3,300 money transfer orders on behalf of RIA, for payment through RIA's international network of payment locations, during each of the previous three (3) calendar months.

3.  AGENT'S interest in any of the payments described in Section 2 above shall not vest if the AGENT fails to reach a minimum monthly volume of 3,300 money transfer orders for payment through RIA's international network of payment locations within six (6) calendar months of the Effective Date of this Amendment. If AGENT'S interest in the payments under Section 2 fails to vest, AGENT shall refund to RIA all payments already made to AGENT pursuant to Section 2 above.

4.  AGENT shall accept, process, and maintain a minimum monthly volume of 3,300 money transfer orders on behalf of RIA for payment through RIA's international network of payment locations. If after the completion of the first six calendar months of this Amendment AGENT fails to reach the minimum monthly volume of 3,300 money transfer orders during any calendar month, AGENT shall reimburse RIA a prorated portion of the payment under Section 2 equal to one (1) calendar month of the Special Agent Term.

5.  AGENT'S rights to payment under Section 2 of this Exhibit 3, and the Agreement as a whole, are not assignable to a third party without the express, written, and signed consent of a RIA officer.

6.  AGENT'S obligations pursuant to this Exhibit 3, and the Agreement as a whole, may not be assumed by or assigned to a third party without the express, written, and signed consent of a RIA officer.

7.  AGENT may not close any AGENT business locations subject to this Amendment, or sell, assign, convey or otherwise transfer ownership interest, in whole or in part, in AGENT'S business (es) prior to the expiration of the Special Agent Term without the prior written consent of RIA. If AGENT breaches its obligations under this Section 7, AGENT shall reimburse RIA the prorated portion of the payment under Section 2 for the time period between AGENT'S breach and the expiration of the Special Agent Term.

8.  AGENT shall not sublease, transfer or assign any portion of AGENT'S business location(s) and/or lease(s) for said business location(s) to any individual, party or legal entity that conducts money transfers independently or as an agent of or on behalf of any other money transmitter. If AGENT breaches its obligations under this Section 8, AGENT shall reimburse RIA the prorated portion of the payment under Section 2 for the time period between AGENT'S breach and the expiration of the Special Agent Term.

9.  AGENT shall not refer or direct RIA customers to transfer money through other money transmitters and/or the agents of other money transmitters.

Agent Initials _____



10. If for any reason, including, but not limited to, termination of the Agreement by RIA or indebtedness to RIA by AGENT, AGENT ceases being a RIA agent prior to reaching the time periods referred to in Sections 2(b) and 2(c) above, AGENT forfeits all interest in payments under Section 2(b) and 2(c) above and shall refund to RIA all payments already made to AGENT pursuant to Section 2 above.

11. If for any reason, including, but not limited to, termination of the Agreement by RIA or indebtedness to RIA by AGENT, AGENT ceases being a RIA agent after receipt of full payment pursuant to Section 2 above, but prior to the expiration of the Special Agent Term, AGENT shall reimburse RIA the prorated portion of the payment under Section 2 for the time period between the cessation of their relationship as an agent and the expiration of the Special Agent Term.

12. If the AGENT is indebted to RIA for any amount at the time payment becomes due to AGENT pursuant to Sections 2(b) and 2(c) above, RIA reserves the right to offset any balance AGENT owes RIA in connection with the Agreement against any balance RIA owes AGENT pursuant to this Exhibit 3.

13. In no event shall the Term, as defined in the Agreement, end prior to the expiration of the Special Agent Term, as defined herein. If said Term is due to expire prior to the conclusion of the Special Agent Term, the Term shall be renewed for at least a minimum period of time equal to the time remaining until the expiration of the Special Agent Term.

14. In the event AGENT breaches any of the terms of the Agreement, including but not limited to the terms of this Exhibit 3, RIA's obligations pursuant to this Exhibit 3 shall immediately cease.

15. The terms, provisions and covenants of this Exhibit 3 shall inure to the benefit of and be binding on all of AGENT'S successors in interest, heirs and assigns. Furthermore, the terms, provisions and covenants of this Exhibit 3 shall be binding on any and all other current and future businesses and locations owned and/or operated by AGENT, either directly or indirectly, in whole or in part, or as a shareholder, partner, member and/or sole proprietor.

16. AGENT warrants, represents and acknowledges that entering into this Amendment does not violate the terms of any of AGENT'S existing legal and/or contractual obligations with any third parties.

17. AGENT acknowledges and agrees that the terms of this Exhibit 3 shall not be effective unless and/or until AGENT receives all mandatory RIA departmental approvals necessary to operate as a Special Agent of RIA.

CONTINENTAL EXCHANGE SOLUTIONS, INC.

_____    Date: _____
Juan C. Bianchi
Chief Executive Officer

AGENT:

_____    Date: _____
Name: RAFAEL CARDONA
Title: MEMBER MANAGER

AGENT:

_____    Date: _____
Name:
Title:

Agent Initials _____